UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENERGY POLICY ADVOCATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-3307 (TNM) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

Defendant, U.S. Department of State (the "Department" or "State"), respectfully opposes

Plaintiff's motion for a preliminary injunction (ECF No. 18).  This case arises under the

Freedom of Information Act ("FOIA").  Plaintiff's motion seeks an order requiring the

Department to "begin expedited processing and to produce records responsive to subparts 2–6 of

Plaintiff's request no later than October 15, 2020."  See Pl. Mem. Mot. for Prelim. Inj. (ECF

No. 18-1) ("Pl. Br.") at 11.

The Court should deny Plaintiff's motion for several reasons.  First, Plaintiff's motion is

improper under the Local Rules of this Court because counsel for Plaintiff failed to comply with

the requirement to confer before filing any nondispositive motion.  Second, insofar as Plaintiff

seeks through its motion to challenge the Department's denial of its request for expedited

processing, that argument can be supported, if at all, only by the "record before the agency" at

the time of the original request, which Plaintiff failed to provide in support of its motion and

which, in any event, supports the Department's denial of Plaintiff's request for expedited

processing.  Finally, insofar as Plaintiff seeks an order imposing a deadline for State to process

certain subparts of Plaintiff's FOIA request, Plaintiff relies on the traditional standards for a preliminary injunction which multiple courts in this District have determined are generally not appropriate in FOIA cases.  Indeed, Plaintiff has already received all the relief to which it is entitled at this stage in the litigation and fails to make out a case for stretching the vehicle of a preliminary injunction—whose purpose is generally to preserve the status quo—to force the agency to shift its limited FOIA processing resources away from other requests in order to leap-frog Plaintiff's request to the front of the line.

## BACKGROUND

### I.    Statutory and Regulatory Background.

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis.  Daily Caller v. Dep't of State, 152 F. Supp. 3d 1, 8 (D.D.C. 2015) (citing Open Am. v. Watergate Special Prosecution Force, 547 F.2d 605, 616 D.C. Cir. 1976)).  In 1996, Congress amended FOIA to provide for "expedited processing" of certain categories of requests.  See Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8, 110 Stat. 3048 (1996), (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, places a FOIA request in a more advantageous processing track, leading to faster productions.  See Stein Decl. ¶ 5.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records in the following circumstances:  (i) "in cases in which the person requesting the records demonstrates a compelling need," 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency," id. § 552(a)(6)(E)(i)(II). FOIA defines "compelling need" to mean, as relevant here, "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning

actual or alleged Federal Government activity."  Id. § 552(a)(6)(E)(v)(II).  The "other cases determined by the agency" provision (subsection (E)(i)(II)) gives agencies "'latitude to expand the criteria for expedited access' beyond cases of 'compelling need.'"  Al-Fayed v. CIA, 254 F.3d 300, 307 n.7 (D.C. Cir. 2001) (quoting EFOIA, H.R. Rep. No. 104-795, at 26 (1996), reprinted in 1996 U.S.C.C.A.N 3448, 3469, 1996 WL 532690 (Sept. 17, 1996)).

The Department's regulations provide that "[r]equests shall receive expedited processing when a requester demonstrates that a 'compelling need' for the information exists."  22 C.F.R. § 171.11(f).  A "compelling need" is deemed to exist when a requester can demonstrate that, among other items:

> The information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal government activity.  Requesters must demonstrate that their primary activity involves publishing or otherwise disseminating information to the public in general, not just to a particular segment or group.

Id. §171.11(f)(2).  The regulation defines "urgently needed" information as "information [that] has a particular value that will be lost if not disseminated quickly.  Ordinarily, this means a breaking news story of general public interest."  Id. § 171.11(b)(2).  The Department requires requesters to "set forth with specificity the facts on which the request is based."  Id. § 171.11(f)(4).  If a request for expedition is granted, the request is "process[ed] as soon as practicable."  5 U.S.C. § 552(a)(6)(E)(iii).

## II.   The Department's FOIA Processing Procedures.

Even before considering the severe impact of the COVID-19 pandemic on the Department's processing capabilities, responding to a FOIA request requires the Department of State to engage in a multi-step process that requires significant time and resources.  When a FOIA request is received, the responsible office for the Department—the Office of Information

Programs and Services ("IPS")—first assigns it to one of three tracks: simple, complex, or expedited.  Stein Decl. ¶ 5.  If a request is granted expedited processing, it is "handled by a specific branch within IPS, and internal deadlines . . . are more compressed than those for non-expedited requests."  Id.  If a request becomes the subject of litigation, it is then transferred to a specialized component within IPS.  Id. ¶ 6.

After a request has been assigned to a track, IPS must "search[] . . . locations that would be reasonably likely to have records responsive to the FOIA request," which includes IPS searching centralized databases as well as tasking other components within the Departments to perform their own searches and to send potentially responsive records to IPS for review.  Id. ¶ 8. After searching for and collecting potentially responsive records, IPS assigns an employee to "perform[] a line-by-line review" of the relevant documents in order to determine whether the record is responsive, whether it contains "classified or other sensitive information that must be withheld under one of the nine FOIA exemptions," and whether the document contains information that implicates the equities of other federal agencies or third parties.  Id. ¶ 11. Throughout this process, the reviewer must consult with other Department employees in order to ensure that information falling under a FOIA exemption is appropriately redacted.  See id. ¶ 12.

This sensitive and important task must be done carefully because many of the Department's records may include, for example, privacy-sensitive, personally identifiable information about individuals who could suffer reprisals if their identities or opinions are revealed, or information about law enforcement sources, confidential commercial and financial information, and candid deliberations about proposed U.S. foreign relations policies and activities, some of which may be classified.  In certain circumstances, including when a request

is the subject of litigation, the process takes longer because multiple layers of review are required, including by other Federal government agencies.  See id. ¶ 13.

This lengthy, resource-intensive process has been put under increasing strain over the past decade as "the number of FOIA requests submitted to Federal government agencies has continued to increase, and the number of electronic records identified in response to these requests has grown exponentially."  Id. ¶ 37.  In addition, the Department's FOIA processing is further strained by increasing litigation demands.  See id. ¶¶ 38-40.  In early 2014, the Department was a defendant in approximately 50 FOIA litigation cases; now the Department is a defendant in approximately 199 cases, involving more than 360 FOIA requests.  Id. ¶ 40.  This increasing litigation burden has an outsized effect on the Department's FOIA resources:  only 2% of the Department's FOIA requests are the subject of litigation, but those requests consume approximately 90% of IPS's FOIA review resources.  Id. ¶ 41.

These litigation demands have a "direct correlation" with a backlog in the Department's processing of FOIA requests and can have a substantial effect on the Department's ability to process and prioritize FOIA requests.  Id. ¶ 44.  In other words, although the Department continues to strive to meet its litigation obligations, doing so "come[s] at the expense of all other requesters seeking information from the government."  Id. ¶ 43.  The result of which is "an increased backlog that, in turn, increases the risk of future litigation and, more importantly, results in long delays between requests for information and the production of that information to requesters and the public."  Id. ¶ 46.

## III.    The Effects of the COVID-19 Pandemic on State's FOIA Processing.

The Department's FOIA processing capacity has been significantly impacted by the ongoing COVID-19 pandemic, which resulted in March and April 2020 in the immediate

transitioning of State's entire FOIA processing staff to maximum telework and an estimated 96% reduction in State's ability to process FOIA requests.  See id. ¶¶ 16-24.  Since then, the Department as undertaken unprecedented efforts to adapt its FOIA processing procedures to pandemic conditions, including by equipping its personnel to telework.  Id. ¶¶ 25-26.  As a result, the Department has been able to resume remote processing on hundreds FOIA requests using its novel FOIA litigation network, FOIAXpress.  Id. ¶ 27.

However, "[d]ue to the timing of this particular FOIA case, the potentially responsive records that have been collected in response to Plaintiff's request are stored and processed in" the Department's legacy document review system, known as FREEDOMS 2 ("F2"), "which is operated exclusively on a Department classified computer network, ClassNet.  ClassNet is accessible only from a Department workplace" and is "inaccessible to any Department employees who are teleworking or otherwise not physically present at a Department worksite." Id. ¶ 9.  Although the Department recently entered Phase Two of its three-step process for resuming normal operations, as of the date of this filing only 20% of the Department's FOIA processing personnel have returned to their Department workstations, nearly all on a part-time basis.  Id. ¶ 30.  The Department "has developed and is implementing a plan to direct those limited onsite resources to maximize their impact across the Department's FOIA litigation caseload."  Id. ¶¶ 30-31.  However, since (1) "[n]one of the [personnel] who have returned to the office were previously assigned to this case;" (2) "a large number of potentially responsive records are left to process in connection with Plaintiff's request;" and (3) Plaintiff's request "is not subject to expedited processing," State "will . . . remain unable . . . to resume the processing of this request until the personnel assigned to this case have decided of their own volition and pursuant to the Department's reopening guidance to return to their onsite workspace."  Id. ¶ 33.

**IV.     Plaintiff's FOIA Request and the Instant Litigation.**

Plaintiff's FOIA request, dated June 19, 2019 and attached hereto as Exhibit 1 ("Request

Letter"), "sought information relating to the December 2015 Paris Climate Agreement (the

"Paris Agreement"), and specifically the Circular 175 Memorandum of Law" prepared by the

Department and certain related records.  See also ECF No. 18-1 at 2.  As asserted by Plaintiff's

motion:  "The 'Circular 175' analysis sets forth whether the relevant agreement is a treaty

requiring Article II, Section 2 Senate 'advice and consent' and why, or why not."  Id.  Plaintiff's

request also included a request for expedited processing, on the grounds that Plaintiff "is a

media entity for FOIA's purposes" and because "time is of the essence."  Req. Letter at 5.

Plaintiff further stated that "[i]n the event State denies [Plaintiff's] request for expedited

processing, [Plaintiff] intend[s] to promptly seek to protect [its] rights to obtain the record(s) in

the most timely fashion consistent with the FOIA."  Id. at 6.

In response to Plaintiff's request, the Department issued an acknowledgement letter,

dated June 29, 2019 and attached hereto as Exhibit 2 ("Acknowledgement Letter"), which

denied Plaintiff's request for expedited processing because it did "not demonstrate a compelling

need" under any of the standards set out in 22 C.F.R. § 171.11(f).  Acknowledgement Letter

at 1.  During the nearly fourteen months between the Department's issuance of the

Acknowledgement Letter and Plaintiff's filing of this motion, Plaintiff never once challenged

the Department's expedited processing determination.

Prior to the COVID-19 pandemic, the Department completed most of its searches and

identified a little more than ten thousand pages of responsive records.  On February 21, 2020,

and March 23, 2020, the Department made releases to Plaintiff of approximately 200 pages of

responsive records, including all of the non-exempt, responsive records sought in subparts 5 and

6 of Plaintiff's request.  See Stein Decl. ¶ 35.  Since then, the Department's FOIA processing has been nearly completely shut down due to the pandemic.  State has been able to perform some of its FOIA processing on a very limited basis in this case, and thereby reviewed 200 pages of potentially responsive records that were accessible via telework.  However, none of those pages were found to be responsive and the balance of the records to be reviewed in this case are not maintained on a system that is accessible via telework.

In their April 28, 2020 and June 26, 2020 joint status reports (ECF Nos. 15, 16), the parties informed the Court of the difficulties faced by the Department as a result of the pandemic and the progress the Department made in responding to Plaintiff's request despite those constraints.  In those filings, Plaintiff neither objected to the delays caused as a result of the pandemic nor criticized the Department's response to that unprecedented situation.  Only in the parties' August 3, 2020, joint status report (ECF No. 17) did Plaintiff (1) claim that the processing delays resulting from the pandemic were "unlawful;" and (2) announce its intention to file a motion to seek an order setting a production schedule.  Two weeks later, Plaintiff filed the instant motion seeking a preliminary injunction.

## ARGUMENT

### I.    Plaintiff Violated Local Civil Rule 7(m)'s Meet and Confer Requirement.

Counsel for litigants in this Court have a duty to confer with opposing counsel before filing any non-dispositive motion in a civil case.  Local Civil Rule 7(m) requires that

> [b]efore filing any nondispositive motion in a civil action, counsel shall discuss
> the anticipated motion with opposing counsel in a good-faith effort to determine
> whether there is any opposition to the relief sought and, if there is, to narrow the
> areas of disagreement.  The duty to confer also applies to non-incarcerated parties
> appearing *pro se*.  A party shall include in its motion a statement that the required
> discussion occurred, and statement as to whether the motion is opposed.

LCvR 7(m).  Local Civil Rule 7(m) is intended "to promote the resolution of as many litigation disputes as possible without court intervention, or at least to force the parties to narrow the issues that must be brought to the court."  Ellipso, Inc. v. Mann, 460 F. Supp. 2d 99, 102 (D.D.C. 2006).  A "good-faith" effort under Local Rule 7(m) "means that parties must take 'real steps to confer.'"  English v. Wash. Metro. Area Transit Auth., 293 F. Supp. 3d 13, 16 (D.D.C. 2017).  Local Civil Rule 7(m) "seeks to promote actual resolution of nondispositive disputes." United States ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency, 456 F. Supp. 2d 46, 52 (D.D.C. 2006), aff'd, 530 F.3d 980 (D.C. Cir. 2008).  To that end, the "obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation."  United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 235 F.R.D. 521, 529 (D.D.C. 2006).  Failure to comply can justify denial of the motion.  See, e.g., Husayn v. Esper, Civ. A. No. 08-1360 (EGS), 2020 WL 3035052 *8 (D.D.C. June 6, 2020) (denying portion of motion for which relief had not been discussed with opposing counsel and citing Local Civil Rule 7(m)).

Here, counsel for Plaintiff did not fulfill the "meet and confer" requirement in Local Rule 7(m) before filing this non-dispositive motion.  The closest Plaintiff's counsel came to compliance was mentioning, in the Joint Status Report filed on August 3, 2020, that "Plaintiff anticipates filing a motion in the coming days to seek an order setting a production schedule." (ECF No. 17 at 2.)  This provided no meaningful opportunity for counsel for the Department to discuss the actual remedy sought and consult with the agency about what might be realistic to achieve in the absence of a disputed motion.  Counsel for Plaintiff provided no subsequent or additional warning about the instant motion, much less that it would come in the form of a motion for preliminary injunction.  In light of the fact that the core exigency claimed in the

motion is based on the upcoming presidential election, the timing of which has been apparent

for years, and given Plaintiff's utter failure to respond to the Department's initial determination

of its request for expedited processing for nearly fourteen months, there is no apparent reason

for the timing of this motion.  The Court should deny the motion for failure to comply with

Local Civil Rule 7(m).

## II.      Plaintiff is Not Entitled to Expedited Processing.

Regardless of the procedural impropriety of Plaintiff's motion, insofar as Plaintiff seeks

through its motion to overturn the Department's initial denial of its request for expedited

processing, any such challenge must be considered under the relevant statutory provision in

FOIA:  5 U.S.C. § 552(a)(6)(E).  As explained recently by this Court:

> A FOIA requester gets expedited processing if it "demonstrates a compelling
> need."  5 U.S.C. § 552(a)(6)(E)(i)(I).  As relevant here, "compelling need" means
> "urgency to inform the public concerning actual or alleged Federal Government
> activity."  Id. § 552(a)(6)(E)(v)(II). …  To answer this question [of urgency],
> "courts must consider at least three factors:  (1) whether the request concerns a
> matter of current exigency to the American public; (2) whether the consequences
> of delaying a response would compromise a significant recognized interest; and
> (3) whether the request concerns federal government activity."  Al-Fayed v. CIA,
> 254 F.3d 300, 310 (D.C. Cir. 2001).

Elec. Privacy Info. Ctr. v. Nat'l Sec. Comm'n on Artificial Intelligence, 419 F. Supp. 3d 82, 95

(D.D.C. 2019).  FOIA further specifies that any challenge to a denial of expedited processing is

reviewed de novo, based solely on the information that was provided to the responding agency

by the requester at the time of the request.  See 5 U.S.C. § 552(a)(6)(E) ("based on the record

before the agency at the time of the determination"); Al-Fayed, 254 F.3d at 305 (applying this

requirement).

Plaintiff's instant motion neither provides nor refers to its Request Letter.  The motion

further fails to mention the statutory provisions cited above regarding challenging a denial of

expedited processing, including the need for the Court's review to be limited to the record before the agency at the time of the expedited processing request.  This failure effectively constitutes waiver of the argument for failure to provide the necessary information upon which the statute directs the Court to base its decision.

In any event, even if the Court entertains Plaintiff's challenge, the justification provided in Plaintiff's Request Letter for its expedited processing request is fatally deficient.  The Request Letter, which did not address the Al-Fayed factors, argued broadly that the public deserves to know more about how the Obama Administration effectively "revolutionized" the treaty approval process by evading the constitutional requirement for Senate approval. See Ex. 1 at 7.  The core of Plaintiff's argument was that the Obama Administration relied on "severely misleading advice" to support its conclusion that the Paris Agreement was a "treaty" requiring Senate approval.  See id. at 5.  The Request Letter made only brief mention of the upcoming presidential election, see id. at 8, and made no attempt to assert that the presidential candidates or their respective political parties disagreed on the Obama Administration's reasoning and/or determination as to whether the Paris Agreement required Senate approval, or more broadly, what the requested information would add to the public's consideration of the differences between any of the 2020 presidential candidates.  Instead, Plaintiff repeatedly resorted in its Request Letter to critiques of the Obama Administration's efforts to steer clear of the need for Senate approval, see id. at 7, without setting out any plausible reason whatsoever for concluding that "the consequences of delaying a response would compromise a significant recognized interest," Al-Fayed, 254 F.3d at 310.  The Court should therefore reject Plaintiff's motion insofar as it constitutes a challenge to the Department's June 29, 2019 denial of Plaintiff's June 7, 2019, request expedited processing.

Although Plaintiff's motion attempts to fill in some of these deficiencies—especially regarding the upcoming presidential election—that information is clearly beyond the scope of the statutory review provided for under FOIA Section 552(a)(6)(E).  The Request Letter—upon which the Department based its initial expedited processing determination and which, together with the Department's denial letter, is the only record applicable to the Court's review of Plaintiff's challenge—establishes at most that the public has an interest in information regarding the Obama Administration's treatment of the Paris Agreement.  It fails to provide any plausible grounds for State to have concluded that Plaintiff's request was so vital and timely that it merited processing on State's expedited track.

## III.    Plaintiff's Preliminary Injunction Should Be Denied.

Insofar as Plaintiff's motion seeks to do more than just challenge the Department's initial denial of Plaintiff's request for expedited processing—for example, by asking that the Court order the Department to prioritize and process certain subparts of Plaintiff's request within the next six weeks—Plaintiff's arguments fail both because preliminary injunctive relief is generally not appropriate in FOIA cases and because Plaintiff has failed to show that it is entitled to any such relief on the merits.

### A.    Preliminary Injunctive Relief is Generally Not Appropriate in FOIA Cases.

Preliminary injunctive relief "is 'an extraordinary remedy never awarded as of right.'" Friends of Animals v. U.S. Bureau of Land Mgmt., 232 F. Supp. 3d 53, 60 (D.D.C. 2017) (quoting Winter v. Nat. Res. Def. Council, 555 U.S. 7, 24, (2008)); see Munaf v. Green, 553 U.S. 674, 689 (2008) ("A preliminary injunction is an extraordinary and drastic remedy") (citation omitted)).  It "should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion."  Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004).

A party moving for a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested (nonmoving) parties; and (4) that the public interest would be furthered by the injunction.  CityFed Fin. Corp. v. Off. of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995); see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 842–43 (D.C. Cir. 1977).  The final two "factors merge when the Government is the opposing party."  Nken v. Holder, 556 U.S. 418, 435 (2009).

Although the D.C. Circuit has not yet definitively decided whether Winter abrogates the "sliding scale" approach for assessing these four factors previously applied in this Circuit, "[s]everal judges" on the Circuit have "read Winter at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction.'"  See Allied Progress v. Consumer Fin. Prot. Bureau, Civ. A. No. 17-0686 (CKK), 2017 WL 1750263, at *2 (D.D.C. May 4, 2017) (quoting Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011)).  This Circuit has also emphasized that a showing of irreparable harm is an "independent prerequisite" for a preliminary injunction.  Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).

Given the preliminary injunction standards as set out above, multiple courts in this Circuit have found that preliminary injunctive relief is generally not appropriate in FOIA cases for a number of reasons.

First, FOIA establishes its own specialized procedural framework controlling the processing of FOIA requests and procedures for FOIA litigation. See, e.g., 5 U.S.C. § 552(a)(3)(A) (providing that a FOIA request must reasonably describe the records sought and must be filed in accordance with published rules and procedures); id. § 552(a)(4)(C) (requiring

responsive filing within thirty days of service of a complaint).  Courts should not casually sidestep this statutory framework through issuance of preliminary relief.

Second, the traditional purpose of a preliminary injunction is to "preserve the status quo" so that the court can issue a meaningful decision on the merits.  Cobell v. Kempthorne, 455 F.3d 301, 314 (D.C. Cir. 2006) (citation omitted).  Therefore, when, as here, a movant seeks mandatory injunctive relief, i.e., an injunction that "would alter, rather than preserve, the status quo by commanding some positive act—the moving party must meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction."  Elec. Privacy Info. Ctr. v. Dep't of Justice, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) (citations omitted); see also Nat'l Conf. on Ministry to the Armed Forces v. James, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) ("A district court should not issue a mandatory preliminary injunction unless the facts and law clearly favor the moving party." (quotation omitted)).  An order compelling accelerated processing of a FOIA request would not merely preserve the status quo but would force specific action by Defendant.

Third, because preliminary injunctive relief is not intended to provide plaintiffs with a means to bypass the litigation process and achieve rapid victory, "a preliminary injunction should not work to give a party essentially the full relief he seeks on the merits."  Dorfmann v. Boozer, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam); see also Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits.").  As Plaintiff has indicated, however, that is essentially what it seeks here, at least as to parts of its request:  an injunction that the Department "produce records responsive to subparts 2–6 of Plaintiff's request no later than October 15, 2020."  ECF No. 18-1 at 11.  That is further indication that Plaintiff's

motion is merely a tactic to circumvent the standard litigation process.  See Daily Caller, 152 F.
Supp. 3d at 6–7 (noting that "in seeking a preliminary order requiring the State Department to
process fully the plaintiff's outstanding FOIA requests, and produce all responsive non-exempt
documents within twenty business days, the plaintiff essentially requests the full relief it seeks
in filing its underlying Complaint").

Indeed, rather than treating a preliminary injunction as an "extraordinary and drastic
remedy," Munaf, 553 U.S. at 689, Plaintiff seeks an emergency, mandatory injunction as a
means of jumping ahead of other requests (including those that qualify and have been approved
for expedited processing), many of which have been in litigation longer than this case.  Not only
would such an outcome be unfair to other FOIA requesters, it has also resulted in burdensome
and unnecessary motion practice for the parties and the Court.

For these reasons, courts in this District routinely deny requests for preliminary
injunctions in FOIA cases.  See, e.g., Long v. Dep't of Homeland Sec., 436 F. Supp. 2d 38, 44
(D.D.C. 2006) (denying motion for preliminary injunction to compel processing within twenty
days because, among other reasons, "[t]he government has not yet had a chance to . . . provide
the Court the information necessary to make a decision on any material that might be subject to
an exemption"); Allied Progress, 2017 WL 1750263, at *1 (denying request for a preliminary
injunction mandating expedited processing and production where requester failed to show a
likelihood of success on the merits and irreparable harm); Elec. Privacy Info. Ctr. v. Dep't of
Justice, Civ. A. No. 03-2078, (D.D.C. Oct. 20, 2003), Order (ECF No. 4) at 1 (denying, sua
sponte, a request "'enjoining defendant DOJ from continuing to deny plaintiff expedited
processing of plaintiff's Freedom of Information Act request'" because such relief "would
effectively grant all the relief plaintiff seeks"), vacated as moot 2004 WL 2713119 (D.C. Cir.

Nov. 24, 2004).  See also Wadelton v. Dep't of State, 941 F. Supp. 2d 120, 124 (D.D.C. 2013);

Landmark Legal Found. v. EPA, 910 F. Supp. 2d 270, 279 (D.D.C. 2012).  Courts in other

districts do so as well.  See, e.g., Aronson v. Dep't of Hous. & Urban Dev., 869 F.2d 646, 648

(1st Cir. 1989) (denying preliminary injunction); Pinnacle Armor, Inc. v. United States, Civ. A.

No. 07-1655, 2008 WL 108969, at *9 (E.D. Cal. Jan. 7, 2008) (denying injunctive relief and

noting that "[p]laintiff has not provided any authority for the proposition that the claim for the

Freedom of Information Act supports a claim for an injunction"); Carlson v. USPS, Civ. A.

No. 02-5471, 2005 WL 756573, at *8 (N.D. Cal. Mar. 31, 2005) (denying request for injunction

sought to compel "timely" response to FOIA request); Beta Steel Corp. v. NLRB, Civ. A.

No. 97-0358, 1997 WL 836525, at *2 (N.D. Ind. Oct. 22, 1997) (denying preliminary

injunction); cf. Wiedenhoeft v. United States, 189 F. Supp. 2d 295, 296-97 (D. Md. 2002)

(refusing to issue temporary restraining order to force "immediate compliance" with plaintiff's

FOIA requests by moving them "to the head of the queue forthwith").

The Court should similarly deny Plaintiff's motion for preliminary injunctive relief here,

since doing otherwise would simply reward Plaintiff for filing an improper motion for

emergency relief by setting a processing schedule to which Plaintiff is not entitled.

**B.     Even if Preliminary Injunctive Relief Were Appropriate in FOIA Cases, Plaintiff Does Not Satisfy the Standards for a Preliminary Injunction.**

**1.     Plaintiff Has Failed to Establish a Likelihood of Success on the Merits.**

Before a court may enter a preliminary injunction, "[i]t is particularly important for the

movant to demonstrate a substantial likelihood of success on the merits," because "absent a

substantial indication of likely success on the merits, there would be no justification for the

[C]ourt's intrusion into the ordinary processes of administration and judicial review."  Hubbard

v. United States, 496 F. Supp. 2d 194, 198 (D.D.C. 2007) (internal quotation marks and citation omitted).  Here, Plaintiff cannot do so.

Plaintiff argues in its motion that it is likely to succeed on the merits because the Department's failure to respond to its FOIA request within 21 days "creates a presumption that it has failed to respond to a[n] expedited request 'as soon as practicable,'" and that its "acknowledgment that it is continuing to process some FOIA requests is an admission that it is capable of expedited processing of this request, thought it has chosen not to do so."  ECF No. 18-1 at 13.  But neither of those points speak to whether Plaintiff is likely to receive the injunctive relief specifically sought through the present motion.

As already noted above, see supra Part II, Plaintiff's challenge to the Department's expedited processing determination fails because Plaintiff's Request Letter did not satisfy the three-part Al-Fayed test.  And in any event, even if the Court were to determine that Plaintiff's request was now entitled to expedited treatment, that finding would only require that State begin to process Plaintiff's request "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii), meaning Plaintiff would be entitled to no further relief at this time.  The expedited processing provisions of FOIA do not dictate a specific, compressed schedule for the processing of expedited requests, and instead require only that "requests . . . be 'process[ed] as soon as practicable.'"  Protect Democracy Project, Inc. v. Dep't of Def., 263 F. Supp. 3d 293, 296 (D.D.C. 2017) (quoting 5 U.S.C. § 552(a)(6)(E)(iii)).

Additionally, Plaintiff is not likely to succeed on the merits of any suggestion that FOIA entitles Plaintiff to a production of a subset of the non-exempt records it seeks by a date certain.  See ECF No. 18-1 at 12 (requesting that production of subparts 2-6 of Plaintiff's request be completed by October 15).  Plaintiff is entitled only to non-exempt responsive records, and

determining which records are responsive and which are exempt from disclosure cannot be done instantly.  Additionally, in responding to a FOIA request, an agency need only show "that [its] search for responsive documents was adequate, that any exemptions claimed actually apply, and that any reasonably segregable nonexempt information has been disclosed after deletion of exempt information." Sanders v. Obama, 729 F. Supp. 2d 148, 154 (D.D.C. 2010).  FOIA in no way requires State or any other agency to prioritize certain parts of a multi-part request over others, regardless of the relative scope of those subparts.

## 2.    Plaintiff Has Failed to Establish that it Will Suffer Irreparable Harm.

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm." CityFed Fin., 58 F.3d at 747 (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974), internal quotation marks omitted).  The D.C. Circuit "has set a high standard for irreparable injury." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).  The party seeking injunctive relief must show that its injury is "both certain and great," and that it is "actual and not theoretical." Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).  It is a "well known and indisputable principle[]" that an "unsubstantiated and speculative" harm cannot constitute "irreparable harm" sufficient to justify injunctive relief. Id.  In short, "[t]he key word in this consideration is irreparable. . . . The possibility that adequate . . . corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." Id. (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).

It is true that, on very rare occasions, courts have granted preliminary injunctions in FOIA cases on a finding that the subject of the underlying request relates to a matter of national debate implicated in an upcoming election.  However, the Department has already produced all

of the documents responsive to subparts 5 and 6 of Plaintiff's request; two of the five categories

of records that Plaintiff now seeks to prioritize.  The remaining parts of its request that Plaintiff

would have the Department prioritize—subparts 2, 3, and 4—seek the "Memorandum of Law re

Circular 175, Subject: Request for authority to sign and accept the Paris Agreement;" "any

cover memo(s) transmitting Memorandum of Law re Circular 175;" and the "Request for

authority to sign and accept the Paris Agreement."  Req. Letter at 2.  As internal documents

prepared by lawyers and/or Federal government employees for the purpose of deliberating,

identifying, and communicating to one another the legal authority for the United States' entry

into international agreements, some (if not all) of those records are likely exempt from

disclosure under the deliberative process and attorney-client privileges.

In the absence of a showing that Plaintiff would likely be entitled to a significant release

of documents, Plaintiff cannot meet its burden to establish that it will be irreparably harmed if it

fails to receive a determination on an expedited timeframe.  See Elec. Privacy Info. Ctr., 15 F.

Supp. 3d at 46 (finding that a requestor "cannot claim to be injured—much less 'irreparably'

so—if the [defendant] withholds documents that [plaintiff] is not entitled to access in the first

instance"); Nation Magazine v. Dep't of State, 805 F. Supp. 68, 74 (D.D.C. 1992) (denying

preliminary injunction on ground that plaintiff had failed to demonstrate irreparable harm

because "[e]ven if this Court were to direct the speed up of processing of their requests,

[plaintiffs] have not shown at this time that they are entitled to the release of the documents they

seek" as "it is undisputed that at least some of the documents . . . are probably exempt from

production under the FOIA").  Therefore, since a substantial portion of the documents Plaintiff

now seeks have already been released and many, if not all, of the remainder would likely be

exempt from disclosure, Plaintiff cannot establish that it will suffer irreparable harm.

Moreover, Plaintiff's arguments as to the exigency of its request provide little other than unsupported conjecture that delaying a response until after the election will be "too late." ECF No. 18-1 at 15. In its motion, Plaintiff asserts without evidence or further explanation that "the upcoming election is likely to be the public's only opportunity to examine or challenge either candidate's position on the Paris Agreement." Id.; see also id. at 3 ("The public now confronts its one chance to examine this action."). But the history of the Paris Agreement itself suggests otherwise. The current administration reversed the position of the previous administration on the country's commitment to the Agreement, implying that further reversals would be equally possible.

Furthermore, Plaintiff only hints in its motion at a connection between the information sought through its FOIA request and the political decision facing the public in the upcoming presidential election. Plaintiff describes the requested records as the "working law" that the Obama Administration created and/or relied upon to find that the Paris Agreement was not a treaty requiring Senate approval, id. at 2, and argues that the importance of the information stems from the disagreement among the 2020 presidential candidates as to whether the country should recommit or stay out of the Agreement, id. at 3. Those arguments in no way address whether the current presidential candidates disagree on the Obama Administration's reasoning and/or determination as to whether the Paris Agreement required Senate approval, or more broadly, what the requested information would add to the public's consideration of the differences between the 2020 presidential candidates.

The closest Plaintiff comes to addressing this issue is in the background section of its motion, where it asserts that unspecified "courts are holding parties to the Paris Agreement to its terms" and "[t]he U.S. faces the real prospect of being subjected to these terms which, this

evidence indicates, were improperly committed to on a false premise." Id. at 10.  Once again, Plaintiff seems primarily concerned with informing the public about the Obama Administration's decision regarding the need for Senate approval, rather than the upcoming presidential election.

Finally, Plaintiff should be foreclosed from arguing that it will suffer irreparable harm under the circumstances because of its inexcusable delay in challenging both the Department's initial expedited processing determination and its pandemic processing plan.  Plaintiff submitted its FOIA request, including its request for expedited processing, to the Department on June 7, 2019.  Despite Plaintiff's claims to the contrary, see ECF No. 18-1 at 10 (stating that Plaintiff "received no response . . . from State" between June 7, 2019, and November 4, 2019), the Department issued an acknowledgement letter formally denying Plaintiff's request for expedited processing on June 29, 2019, nearly fourteen months before Plaintiff filed this motion. Similarly, the Department has clearly communicated with both Plaintiff and the Court about the effect of the pandemic on State's processing capabilities and its pandemic processing plan for nearly four months prior to the filing of this motion.  Plaintiff has therefore known for at least several months that the records it seeks would not be released prior to the November presidential election, yet only now asks that the Court saddle the Department with an extraordinarily abbreviated processing timeline to make up for Plaintiff's own inattention.  The Court should not allow such an inequitable result.

3.      The Balance of Equities and the Public Interest Weigh Against a Preliminary Injunction.

Along with alleged harm to Plaintiff, the Court must consider whether a preliminary injunction of the sort demanded by Plaintiff would be in the public interest or harm nonlitigants. See Al-Fayed, 254 F.3d at 303.  The relief Plaintiff seeks is not in the public interest and would

harm nonlitigants, and for this reason as well, Plaintiff's motion should be denied.  See

Wadelton v. Dep't of State, 941 F. Supp. 2d 120, 124 (D.D.C. 2013).

In its motion, Plaintiff seizes on the fact that State has been able to resume some limited

processing of other FOIA requests and cites that movement as proof that the Department "faces

no discernable hardship by being at long last compelled to satisfy *this* FOIA request."  ECF

No. 18-1 at 16 (emphasis in original).  The facts are otherwise as described at length in the

Department's attached Declaration of Eric F. Stein, e.g., ¶¶ 16-32.  The effects of the

COVID-19 pandemic on the ability of the Department to process FOIA requests have been

dramatic and by now are likely quite familiar to the Court.  The potentially responsive records

that have been collected in response to Plaintiff's request are stored and processed on the

Department's FREEDOMS 2 network, which is operated exclusively on a Department classified

network to accessible via telework.  At the same time, State relies largely on retired Foreign

Service Officers for its FOIA processing, many of whom are in the high-risk group for

COVID-19, meaning very few have been able to return to work during the pandemic.  The fact

that the pandemic has not shuttered 100% of State's FOIA processing is admirable in these

circumstances.  Moreover, Plaintiff's arguments gloss over the scope and scale of State's overall

FOIA workload and jump to the conclusion that its FOIA request should leap-frog to the front

of the line.

Further, Plaintiff's request for injunctive relief threatens to compromise the delicate

balancing of interests that Congress undertook in enacting the FOIA.  Importantly, granting

accelerated processing of Plaintiff's request would disadvantage other, similarly situated

members of the public who themselves have FOIA requests pending before the Department of

State, including some that qualify for and have been granted expedited processing.  See Baker v.

Consumer Fin. Prot. Bureau, Civ. A. No. 18-2403 (CKK), 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018) (finding that a "preliminary injunction ordering the immediate processing and release of the requested records" "would harm the . . . other requesters . . . in line ahead of Plaintiff and would erode the proper functioning of the FOIA system").  Ordering the Department to complete Plaintiff's request on an artificial timeline would require resources to be diverted from those other requests and, thus, would undermine the interests of those requesters as well as the overall public interest in proper operation of the FOIA, including its provision for expedition.  See Nation Magazine, 805 F. Supp. at 74 (entry of a preliminary injunction expediting a FOIA request over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration of [ ] FOIA"); Elec. Privacy Info. Ctr., 15 F. Supp. 3d at 47 ("[A]llowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs."); Protect Democracy Project, 263 F. Supp. 3d at 303 ("[R]equiring production by a date certain, without any factual basis for doing so, might actually disrupt FOIA's expedited processing regime rather than implement it."); see also Stein Decl. ¶ 43 (time spent responding to FOIA litigation obligations "comes at the expense of all other requesters seeking information from the Department").

In addition, granting Plaintiff's request for an extraordinarily accelerated processing schedule would compromise the public interest in ensuring that certain types of documents, the disclosure of which would cause harm, are carefully redacted consistent with the FOIA exemptions.  Cf. Stein Decl. ¶ 12.  The exemptions listed in Section 552(b) embody a judgment by Congress that the public interest would best be served by allowing agencies to withhold certain records—for example, privileged information such as that commonly appearing in the

documents Plaintiff seeks, 5 U.S.C. § 552(b)(5).  Indeed, Congress specifically recognized that, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised.  See H.R. Rep. No. 104-795, at 23, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken any interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.").  Ordering the Department to disclose documents on an artificial, accelerated timetable, threatens to risk disclosure of statutorily exempt material. See Daily Caller, 152 F. Supp. 3d at 14 ("Requiring the agency to process and produce [requested] materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA."); Protect Democracy Project, 263 F. Supp. 3d at 302 ("Imposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information."); Baker, 2018 WL 5723146, at *5 ("Ordering Defendant to process and release documents according to Plaintiff's timeline risks that, in its haste, Defendant will inadvertently release records which fall under a FOIA exception and Congress has decided should not be released.").  For this reason as well, the public interest weighs in favor of applying the normal, statutorily-provided processing schedule to Plaintiff's request.

Therefore, for all of the reasons set out above, the public interest is best served by permitting the Department to continue implementing its pandemic processing plan with respect to all of the records sought by Plaintiff and all other FOIA requesters, without diverting State's resources towards handling unnecessary litigation.

**CONCLUSION**

For these reasons, Plaintiff's motion for a preliminary injunction should be denied.

Dated: September 1, 2020                    Respectfully submitted,

                                            MICHAEL R. SHERWIN
                                            Acting United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar #924092
                                            Chief, Civil Division

                                             /s/ *Alan Burch*
                                            ALAN BURCH, D.C. Bar #470655
                                            Assistant United States Attorney
                                            United States Attorney's Office, Civil Division
                                            555 Fourth St., NW
                                            Washington, DC 20530
                                            (202) 252-2550, alan.burch@usdoj.gov

                                            *Counsel for Defendant*