UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ENERGY POLICY ADVOCATES,<br><br>_Plaintiff_,<br><br>v.<br><br>U.S. DEPARTMENT OF STATE,<br><br>_Defendant_. | Civil Action No. 19-3307 (TNM) |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant, the U.S. Department of State ("Department"), respectfully moves, pursuant to Federal Rule of Civil Procedure 56, for summary judgment in this Freedom of Information Act ("FOIA") case brought by Plaintiff, Energy Policy Advocates.  As explained in the accompanying memorandum and supporting materials, the Department properly withheld information under the relevant FOIA exemptions and produced all reasonably segregable material.  For this reason, Defendant is entitled to summary judgment as a matter of law.

\*      \*      \*

Dated:  March 24, 2023

Respectfully submitted,

MATTHEW M. GRAVES, DC Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:     /s/ *Dedra S. Curteman*
DEDRA S. CURTEMAN, IL Bar No. 6279766
Assistant United States Attorney
601 D Street N.W.
Washington, D.C.  20530
(202) 252-2550
dedra.curteman@usdoj.gov

*Counsel for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ENERGY POLICY ADVOCATES,

       *Plaintiff*,

       v.

U.S. DEPARTMENT OF STATE,

       *Defendant*.

Civil Action No. 19-3307 (TNM)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

BACKGROUND ................................................................................................................ 1

LEGAL STANDARD....................................................................................................... 4

ARGUMENT .................................................................................................................... 5

   I.   The Agency Properly Applied Exemption 5........................................................ 5

      A.  The Agency's Attorney-Client Privilege Withholdings Are Appropriate. ................... 6

      B.    The Agency's Deliberative Process Privilege Withholdings Are Appropriate. ......... 8

   II.   The Agency Released All Reasonably Segregable Non-Exempt Information. .................. 13

CONCLUSION................................................................................................................ 14

## TABLE OF AUTHORITIES

*Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ................................................................. 13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................... 4

*Brayton v. Off. of U.S. Trade Rep.*,
    641 F.3d 521 (D.C. Cir. 2011) .............................................................. 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................... 4

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
    600 F. Supp. 114 (D.D.C. 1984) ...................................................... 9, 10

*Cleveland v. United States*,
    128 F. Supp. 3d 284 (D.D.C. 2015) ....................................................... 8

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ......................................................... 7, 9

*CREW v. Dep't of Homeland Sec.*,
    648 F. Supp. 2d 152 (D.D.C. 2009) ....................................................... 9

*Dep't of Def. v. Fed. Labor Relations Auth.*,
    510 U.S. 487 (1994) ........................................................................... 5

*Dep't of Just. v. Tax Analysts*,
    492 U.S. 136 (1989) ........................................................................... 5

*Elec. Frontier Found. v. DOJ*,
    739 F.3d 1 (D.C. Cir. 2014) ................................................................ 10

*FPL Grp. Inc. v. IRS*,
    698 F. Supp. 2d 66 (D.D.C. 2010) ......................................................... 9

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) .............................................................................. 8

*In re Sealed Case*,
    121 F.3d 729 (D.C. Cir. 1997) .............................................................. 8

*Jud. Watch, Inc. v. Dep't of Just.*,
    20 F.4th 49 (D.C. Cir. 2021) ................................................. 8

*Mapother v. Dep't of Just.*,
    3 F.3d 1533 (D.C. Cir. 1993) ................................................ 8

*McCutchen v. Dep't of Health & Human Servs.*,
    30 F.3d 183 (D.C. Cir. 1994) ................................................ 5

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ............................................. 4

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ....................................... 5, 6, 10

*Media Rsch. Ctr. v. Dep't of Just.*,
    818 F. Supp. 2d 131 (D.D.C. 2011) ....................................... 4, 5

*Nat'l Treas. Emps. Union v. U.S. Customs Serv.*,
    802 F.2d 525 (D.C. Cir. 1986) ............................................ 5, 6

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ................................................... 6, 9, 10

*Petroleum Info. Corp. v. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992) ........................................... 8, 9

*Pub. Citizen Health Rsch. Grp. v. FDA*,
    185 F.3d 898 (D.C. Cir. 1999) ............................................. 5

*Reps. Comm. for Freedom of the Press v. CBP*,
    567 F. Supp. 3d 97 (D.D.C. 2021) ........................................ 7, 8

*Reps. Comm. for Freedom of the Press v. FBI*,
    3 F.4th 350 (D.C. Cir. 2021) ............................................. 8

*Reyes v. EPA*,
    991 F. Supp. 2d 20 (D.D.C. 2014) ......................................... 7

*Rockwell Int'l Corp. v. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001) ............................................ 6

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ........................................... 5

*Spirko v. U.S. Postal Serv.*,

    147 F.3d 992 (D.C. Cir. 1998) ................................................................. 6

*Tax Analysts v. IRS*,

    117 F.3d 607 (D.C. Cir. 1997).......................................................... 6-7, 7

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,

    478 F. Supp. 2d 77 (D.D.C. 2007) ...................................................... 4, 6

*Vaughn v. Rosen*,

    484 F.2d 820 (D.C. Cir. 1973) ............................................................... 5

*Wolf v. CIA*,

    473 F.3d 370 (D.C. Cir. 2007) ............................................................... 5

This case involves a Freedom of Information Act ("FOIA") request made by Plaintiff to Defendant Department of State ("Department"). As explained in further detail below, in the accompanying Declaration of Susan C. Weetman, and in the Department's *Vaughn* Index, Ex. 1, the Department provided all reasonably segregable records, and withheld only that information that is properly exempt from release under FOIA Exemption 5.

## BACKGROUND

Many formal decisions within the Department of State are made through the approval of specialized memorandums called "action memos," which convey recommendations made by relevant bureaus within the Department to the Department's decision maker for his or her decision. Weetman Decl. ¶ 13. Action memos usually include attachments that provide more detail on a particular topic or other relevant background information for the decision maker's review and reference before taking a final action on the subject. *Id.* ¶ 16. While the decisionmaker's ultimate approval (or disapproval) of the action proposed in an action memo does not signify adoption (or rejection) of all the reasoning or background discussion included in the action memo, *id.* ¶ 17, the action memo and its attachments typically distill the Department's deliberations into a succinct explanation of the views of internal and external subordinate officials advising the recipient of the action memo. *Id.*

The Secretary of State has authority to approve the negotiation, conclusion, amendment, and termination of international agreements by the United States. *Id.* ¶ 20. The Secretary of State has also delegated authority to approve the negotiation, conclusion, amendment, and termination of international agreements to the Deputy Secretary of State and six Under Secretaries of State. *Id.* All aspects of an agreement, including whether to accept the terms of an agreement or whether to recommend to the President that Senate advice and consent should be sought, are determinations

ultimately decided by State Department officials who have been delegated authority to make those decisions.  *Id.*  To seek approval from the Secretary or his or her designee to conclude an international agreement, the lead bureau for a particular topic area—with the heavy involvement of the Department's Office of the Legal Adviser—prepares a specialized action memo called a Circular 175 ("Circular")[1] with relevant attachments.  *Id.* ¶ 21.  The lead bureau then organizes the clearance of that package by all other relevant offices and agencies.  *Id.*

On June 7, 2019, Plaintiff submitted a FOIA request (which the Department subsequently denoted as F-2019-06836) regarding the Department's Circular process.  Plaintiff's request sought the following information (which is summarized for purposes of the present motion):

1) all Circular 175 requests,
2) Memorandum of Law re Circular 175, Subject: Request for authority to sign and accept the Paris Agreement
3) any cover memo(s) transmitting Memorandum of Law re Circular 175
4) Request for authority to sign and accept the Paris Agreement
5) a document titled C-175 Procedure.docx (likely author is Susan Biniaz)
6) a document titled Points on Joining Paris Agreement - One Pager (there is a document by that title that State circulated, possibly to "surrogates" and/or "validators" (we request only the final version; its likely author is Susan Biniaz)
7) any emails a) transmitting either of the above described documents titled i) the Circular 175 for Paris climate agreement, and/or ii) Points on Joining Paris Agreement - One Pager, that b) were sent to any party internal or external, dated April 14, 2016 through September 14, 2016, inclusive, by i) Todd Stern, ii) Michael J, Mattler, iii) Susan Biniaz, iv) Clare Sierawski, v) Franz Hochstrasser, vi) Karen Johnson (Office of Oceans and International Environmental and Scientific Affairs), vii) Selene Ko, and/or viii) Brian J Egan.  We also request all responses to any such transmittal, meaning, we request the entire thread of any email threads containing any such transmittal.

---

[1]    The process of requesting authority to negotiate or join an agreement is informally referred to as the "Circular 175" or "C-175" procedure, a reference to a 1955 State Department "circular" that initially established the process.  *See* Weetman Decl. ¶ 9.

Pl.'s FOIA Request, Ex. 2.[2]  Following Plaintiff's filing of the complaint, on November 13, 2019, ECF No. 1, the Parties met and conferred and agreed to narrow the scope of the request regarding "all Circular 175 requests" to only the Circular requests prepared during the Obama Administration.  After the Department began its production, the Parties later agreed to further narrow the terms of the request to focus on documents related directly to the Paris Climate Agreement.  Weetman Decl. ¶ 10.

In total, the Department subsequently produced 332 documents between February 21, 2020, and October 7, 2022, in response to Plaintiff's FOIA request.  *Id.* ¶¶ 8-9.  Upon the conclusion of the Department's processing, the Parties conferred regarding potential disputes. Plaintiff does not challenge the adequacy of the Department's searches.  *See* ECF No. 45.  With respect to the Department's withholdings, on February 24, 2023, the Department released supplemental material that it had previously withheld in part, including the release of various Department employees' names listed in the Paris Climate Agreement C-175 Action Memo ("Action Memo"), a withholding Plaintiff had previously disputed.  *Id.* ¶¶ 11-12.  Defendant subsequently provided Plaintiff a draft *Vaughn* Index.  After additional review and conferral, Plaintiff communicated to counsel that it intended to continue to challenge the Department's Exemption 5 withholdings in three documents and that it did not intend to challenge the Department's Exemption 6 withholdings.[3]  *See* Ex. 3, March 23, 2023 E-mail.  Specifically, Plaintiff maintains its challenges to the Exemption 5 withholdings within the Action Memo, an

---

[2]     All exhibit page numbers, including for the *Vaughn* indices, refer to the ECF-assigned page numbers.

[3]     The Department Exemption 6 withholdings, as reflected in the February 24, 2023 supplemental production, pertains to State Department employees' cell phone numbers, which Plaintiff does not dispute.

attachment to the Action Memo, and a set of draft talking points sent to the National Security Council.  *See generally* Ex. 1.

## **LEGAL STANDARD**

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  A genuine issue is one that "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]"  *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.").  A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"  *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,

478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).

## ARGUMENT

### I.    THE AGENCY PROPERLY APPLIED EXEMPTION 5.

FOIA does not allow the public to have unfettered access to government files.  *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994).  Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements.  *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494 (1994).  FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions.  5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989).  To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions.  *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (internal citations omitted).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* Index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption."  *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986);

*see also Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973).  The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treas.*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* Index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998).

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client, attorney work-product, confidential commercial information, and deliberative-process privileges.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001).  The Exemption 5 withholdings in this case invoke the attorney-client and deliberative-process privileges.

### A.     The Agency's Attorney-Client Privilege Withholdings Are Appropriate.

The attorney-client privilege covers "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice." *Mead*

*Data*, 566 F.2d at 252.  This privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'" *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quoting *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984)).  Courts may infer confidentiality where communications suggest that "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980); *see also Tax Analysts*, 117 F.3d at 618 ("[T]he 'client' may be the agency and the attorney may be an agency lawyer.").

Here, the Department redacted portions of the Action Memo (Ex. 1, Doc. No. 1) and an attached background document (Ex. 1, Doc. No. 2), prepared by Department personnel and Department attorneys within the Office of the Legal Adviser, both of which contained legal advice attendant to the potential U.S. acceptance of the Paris Climate Agreement.  Weetman Decl. ¶¶ 31-32, 43.  The Department also redacted confidential communications between a Department attorney and National Security Council officials regarding the legal issues involved in the domestic process for the U.S. to enter into an international agreement (Ex. 1, Doc. No. 3).  Weetman Decl. ¶¶ 37, 43.  Based on a similar set of facts, another court within this district upheld an agency attorney's guidance to another executive office as covered by attorney-client privilege and exempt under Exemption 5.  *See Reyes v. EPA*, 991 F. Supp. 2d 20, 25 n.3 (D.D.C. 2014).  The redacted information fits squarely within the attorney-client privilege.  *See generally* Ex. 1.

Further, the Department reasonably determined that disclosure of this information would discourage employees from seeking legal advice to guide their policy decisions based upon a full understanding of the relevant facts and law.  Weetman Decl. ¶¶ 45-46; *see also Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (McFadden, J.) ("Release of

attorney-client communications would undoubtably undermine our legal culture. Agencies would lose an important tool in their decisionmaking process—employees' ability to confidentially consult agency lawyers."). In this vein, it is important to underscore that Department policy recognizes that the receipt of legal advice, as was done in the formulation of the Action memo, is essential to determine whether it is appropriate for the United States to enter into an international agreement. Weetman Decl. ¶ 46. Moreover, the guidance within the withheld portions of the documents contains specific legal analysis related to the substance of the Paris Climate Agreement. *Id.* ¶ 31.

### B. The Agency's Deliberative Process Privilege Withholdings Are Appropriate.

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States*, 617 F.2d at 866).

The deliberative process privilege protects "materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). This privilege rests "on the obvious realization that officials will not communicate candidly among

themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021).

The deliberative process privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

The documents withheld pursuant to the deliberative process privilege reflect predecisional and deliberative advice provided to the Secretary of State (for the Action Memo and its attachment), and to National Security Council officials (for the draft talking points). All three documents reflect employees' individual opinions, thoughts, questions, and comments relating to

policy and legal questions about the purpose, content, and form of the Paris Climate Agreement prior to the United States' acceptance of the Agreement.  Weetman Decl. ¶¶ 31-32, 39.

The Department's *Vaughn* Index details the deliberations at issue for each entry.  *See generally* Ex. 1.  As to the Action Memo and its attachment, the documents detail the request of subordinate Department officials for the authority to sign and accept the Paris Climate Agreement. Weetman Decl. ¶ 31.  The Department released all portions of both documents that are purely factual or encompass the final decision reached.  *Id.* ¶ 33.  The withheld portions are predecisional as the written contents of the memorandum and its attachment predate any final determination about the ultimate course of action and deliberative as they reflect the distillation of the Department's considerations of the rationale, merits, and drawbacks of the suggested course of action.  *Id.* ¶ 34.  The withheld portions for the Secretary to consider in making his decision were generated before the memorandum was ultimately signed and, as a result, predate the final determination about whether and how to enter the Paris Climate Agreement.  *See* Ex. 1, Doc. Nos. 1, 2.  And though the Secretary ultimately signed the memorandum, his signature does not negate the propriety the Department's withholding; rather, it simply reflects his determination to approve (or disapprove as could have been the case) the recommendations of the memorandum, which have been released.  *See* Weetman Decl. ¶ 17.  *See Sears*, 421 U.S. at 151 (noting that postdecisional documents may still reflect protected "prior communications and the ingredients of the decisionmaking process"); *Mead Data*, 566 F.2d at 257 ("It would exalt form over substance to exempt documents in which staff recommend certain action or offer their opinions on given issues but require disclosure of documents which only 'report' what those recommendations and opinions are."); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (explaining that adoption occurs when it is evident that "'reasoning in the report is adopted by the [agency] as its

reasoning,'" which is different showing than simply demonstrating that agency "'agrees with the conclusion of a report'" (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 170 (1975)).

With respect to the Department's draft talking points prepared for the National Security Council, the document provides initial guidance as to how to describe to a foreign counterpart the domestic legal process for the United States to enter into an international agreement. Weetman Decl. ¶ 37; Ex. 1, Doc. No. 3. The document represents the input of a Department attorney to National Security Council officials on the potential framing of key issues as well as possible rejoinders to hypothetical arguments that other interlocutors may make. Weetman Decl. ¶ 38; Ex. 1, Doc. No. 3. While the draft talking points may have been significantly altered or completely ignored, the ultimate decision for what to say in the delicate negotiations was ultimately left to those undertaking the diplomatic effort directly. *See id*. Further, the draft was prepared well in advance of a bilateral or multilateral engagement that may never have taken place and that was generated before the United States had reached a decision on the legal form of its entry into the Paris Climate Agreement. Weetman Decl. ¶ 39.

To further support the Department's withholdings, the Department has identified the individuals with final decision-making authority and disclosed that the Department personnel who drafted the documents did not have that final decision-making authority. *See id*. ¶¶ 34, 39. The Department has also provided detailed descriptions of the harm that would ensure from disclosure of this information. *Id*. ¶¶ 35-36, 39-40; *see generally* Ex. 1. With respect to the Action Memo and its attachment, for example, the Department confirmed that "[d]isclosure of the policy and legal advice provided by subordinate members of the Department to the Secretary of State before his decision to enter into an international agreement would foreseeably harm the Department's

deliberative process by creating a substantial chilling effect on internal deliberations about entering future agreements (and the explanation of those deliberations for the Secretary's consideration), particularly because these internal deliberations would become available to officials of foreign governments with which the United States is negotiating international agreements."  Weetman Decl. ¶ 35.  "If the Secretary and officials throughout the Department fear that seeking policy and legal advice about an aspect of a draft agreement will subject that advice and their confidential communications surrounding that advice to public disclosure, they may abstain from seeking important advice or sharing key facts with Department officials and attorneys and the Secretary will not receive a full picture of the policy and legal considerations or risks at issue in entering future agreements."  *Id*.  Moreover, "the disclosure of the advice and recommendations made to the Secretary in the Action Memo and its attachment could cause public confusion about the ultimate reasoning of the Secretary for his final decision, which did not necessarily mean he adopted any particular reasoning proposed by the subordinate officials."  *Id*. ¶ 36.  The stakes are particularly high in this circumstance as "policy and legal analysis of the history of the agreement, U.S. and other nations' goals and strategies for the drafting agreement, the meaning of particular provisions, and what risks exist, could be improperly interpreted as final positions of the entire U.S. Government, not only by the American public, but by representatives of other nations."  *Id*.

The stakes are similarly grave with respect to the draft talking points provided on behalf of the Department to officials from the National Security Council.  In particular, "[d]isclosure of the views and advice offered during internal discussions pertaining to an agency decision and/or policy formulation, and related international engagement strategies, would chill the flow of internal recommendations, candid assessments, and other necessary exchanges, in which Department officials are routinely involved."  *Id*. ¶ 40.  The harm would be particularly acute given the high

sensitivity of the policy issues at stake such as the legal form the Paris Climate Agreement would ultimately take, which would impact the role of Congress in the Agreement, and the fact that no final determination had yet been made as to that policy.  *Id.* ¶¶ 39-40.

In short, releasing the redacted information would chill or deter Department employees from engaging in the candid and frank discussions that are so important and necessary to fulfill the Department's mission.  This chilling effect adequately fulfills the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I).  *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020). Because the materials are predecisional and deliberative, the Department properly protected the information withheld under Exemption 5.

## II.    THE AGENCY RELEASED ALL REASONABLY SEGREGABLE NON-EXEMPT INFORMATION.

Finally, Ms. Weetman has provided a sworn statement, under penalty of perjury, that she personally "reviewed the information withheld pursuant to these exemptions to ensure that all reasonably segregable information in the documents was released in accordance with the requirements of FOIA."  Weetman Decl. ¶ 5.  The Department conducted a "a line-by-line review" of all responsive records to ensure compliance with FOIA and to ensure that the Department released all reasonably segregable non-exempt information.  *Id.*  Defendant is, accordingly, entitled to summary judgment.

\*    \*    \*

**CONCLUSION**

For all the reasons set forth above and in the Declaration of Susan C. Weetman and accompanying *Vaughn* Index, Defendant respectfully requests that this Court grant summary judgment in its favor.

Dated:  March 24, 2023                    Respectfully submitted,

                                                           MATTHEW M. GRAVES, DC Bar No. 481052
                                                           United States Attorney

                                                           BRIAN P. HUDAK
                                                           Chief, Civil Division

                                        By:     /s/ *Dedra S, Curteman*
                                                           DEDRA S. CURTEMAN, IL Bar No. 6279766
                                                           Assistant United States Attorney
                                                           601 D Street N.W.
                                                           Washington, D.C.  20530
                                                           (202) 252-2550
                                                           dedra.curteman@usdoj.gov

                                                           *Counsel for the United States of America*

OF COUNSEL:

MICHAEL ZUBROW
Attorney-Advisor
U.S. Department of State