UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENERGY POLICY ADVOCATES, | |
| Plaintiff, | |
| v. | Civil Action No. 19-3307 (TNM) |
| U.S. DEPARTMENT OF STATE, | |
| Defendant. | |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

DEDRA S. CURTEMAN, IL Bar No. 6279766
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
(202) 252-2550
dedra.curteman@usdoj.gov

*Counsel for the United States of America*

**<u>TABLE OF CONTENTS</u>**

ARGUMENT ...................................................................................................................- 1 -

    I.      The Department Has Demonstrated Foreseeable Harm.....................................- 2 -

    II.    The Department Did Not Impermissibly Withhold Factual Material...............- 10 -

    III.   The Department Did Not Waive Any Privilege................................................- 13 -

    IV.  The Action Memo and Its Attachment Contain No Working Law...................- 17 -

    V.    The E-mail Attachment Containing Draft Talking Points Did Not Message
         Existing Policy..................................................................................................- 18 -

CONCLUSION................................................................................................................- 18 -

**TABLE OF AUTHORITIES**

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ........................................................... 13

*Brinton v. Dep't of State*,
    636 F.2d 600 (D.C. Cir. 1980) ............................................................ 17

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ................................................... 3, 15, 17

*Compet. Enter. Inst. v. Dep't of State*,
    486 F. Supp. 3d 171 (D.D.C. 2020) ...................................................... 6, 7

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001) ........................................................................ 8

*Edmonds v. FBI*,
    272 F. Supp. 2d 35 (D.D.C. 2003) ........................................................ 13

*Elec. Frontier Found. v. Dep't of Just.*,
    739 F.3d 1 (D.C. Cir. 2014) ........................................................... 4, 11

*Elec. Frontier Found. v. Dep't of Just.*,
    826 F. Supp. 2d 157 (D.D.C. 2011) ...................................................... 14

*Elec. Priv. Info. Ctr. v. Dep't of Just.*,
    320 F. Supp. 3d 110 (D.D.C. 2018) .................................................... 10-11

*Hooker v. Dep't of Health & Human Serv.*,
    887 F. Supp. 2d 40 (D.D.C. 2012) ........................................................ 12

*Horowitz v. Peace Corps*,
    428 F.3d 271 (D.C. Cir. 2005) ........................................................... 11

*Hunton & Williams LLP v. EPA*,
    248 F. Supp. 3d 220 (D.D.C. 2017) ...................................................... 17

*In re Clinton*,
    973 F.3d 106 (D.C. Cir. 2020) ............................................................ 1

*In re Sealed Case*,
    737 F.2d 94 (D.C. Cir. 1984) ............................................................ 17

*Juarez v. Dep't of Just.*,
    518 F.3d 54 (D.C. Cir. 2008) ............................................................ 12

*Jud. Watch Inc. v. Dep't of Just.*,
   Civ. A. No. 01-0639 (GK), 2006 WL 2038513 ................................................. 11

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) .......................................................................... 1

*Machado Amadis v. Dep't of State*,
   2020 WL 4914093 (D.C. Cir. 2020) .............................................................. 2, 3

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ...................................................................... 4, 15

*Montrose Chemical Corp v. Train*,
   491 F.2d 63 (D.C. Cir. 1974) .......................................................................... 10

*Murphy v. FBI*,
   490 F. Supp. 1138 (D.D.C. 1980) ................................................................... 13

*Nielsen v. Bureau of Land Mgmt.*,
   252 F.R.D. 499 (D. Minn. 2008) ...................................................................... 5

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ................................................................................ 4, 7, 17

*Ray v. Turner*,
   587 F.2d 1187 (D.C. Cir. 1978) .................................................................. 12-13

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) .......................................................................... 14

*Students Against Genocide v. Dep't of State*,
   257 F.3d 828 (D.C. Cir. 2001) .......................................................................... 5

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007) ...................................................................... 12

*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1976) ...................................................................... 11

*Wash. Post v. Dep't of Defense*,
   766 F. Supp. 1 (D.D.C. 1991) ......................................................................... 13

iii

Defendant, the Department of State ("Department" or "State") respectfully files this reply in further support of its motion for summary judgment, ECF No. 47 ("Mot."), in this Freedom of Information Act ("FOIA") suit.   The Court should grant the Department's motion for summary judgment because it (A) "made 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,'" *In re Clinton*, 973 F.3d 106, 117 (D.C. Cir. 2020) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)), (B) has "describe[d] the justifications for nondisclosure with reasonably specific detail, demonstrate[d] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)), and (C) has described the foreseeable harm that would result from disclosure.  *See* Mot. at 6-13 (describing the reasons for the exemptions), 14 (describing the Agency's efforts to release segregable information); ECF No. 47-1, Weetman Decl. ¶¶ 35-36, 40, 46 (describing foreseeable harm).

As the D.C. Circuit has explained, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible."  *Id.* (internal quotation marks omitted) (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)).  Plaintiff has not demonstrated anything illogical or implausible in the Department's justification of its Exemption 5 withholdings. For the reasons explained below and in the Department's motion, the Court should grant the Department's motion for summary judgment.

## ARGUMENT

In opposition to the Department's motion, Plaintiff argues five main points: (1) that the Department did not show foreseeable harm; (2) that the Department improperly withheld factual information; (3) that the Department has waived its privileges; (4) that the Action Memo and its

Attachment, ECF No. 47-2, *Vaughn* Index, at Doc Nos. 1, 2, contain working law; and (5) that the email attachment containing draft talking points, *Vaughn* Index at Doc. No. 3, messaged existing policy.  All five arguments are unavailing for the reasons explained below.

## I.   The Department Has Demonstrated Foreseeable Harm.

Plaintiff first argues that because the Department withheld statements of policy in the Agency's Action Memo (*Vaughn* Index, Doc. No. 1) that were ultimately adopted by the Secretary of State, the Department cannot show foreseeable harm.  *See* ECF No. 50-1, Corrected Opp. ("Opp."), at 4-5.[1]  Plaintiff is mistaken that "[b]ecause all parties agree that the memo's recommendations were fully accepted and acted upon, disclosing the memo itself would not only educate the public about the State Department's approach to public policy, but would also encourage rather than discourage policy formulation."  Opp. at 4.  Although a recommendation may ultimately be accepted or adopted, the underlying information supporting acceptance or adoption of a policy continue to merit deliberate process protection.  *See Machado Amadis v. Dep't of State*, No. 19-5088, 2020 WL 4914093, at *4 (D.C. Cir. Aug. 21, 2020) ("a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment.").   "[T]he Supreme Court has held that the deliberative-

---

[1]      Page citations refer to the page numbering located at the bottom of each page.

Defendant filed its motion for summary judgment on March 24, 2023.  ECF No. 47.  Plaintiff then filed an opposition to Defendant's motion on April 16, 2023.  ECF No. 48.  In the course of drafting a reply, Defendant discovered that Plaintiff had incorrectly relied on two documents and had cited and used an outdated version of a document for which Defendant had made a re-release in February 2023.  Plaintiff also attached the wrong additional background document in support of its opposition.  ECF No. 49, at 2.  As a result, Defendant's counsel brought the issues to Plaintiff's counsel's attention and the Parties discussed ways to resolve the discrepancies.  *Id.*  Thereafter, the Parties filed a joint motion to amend the briefing schedule, which allowed time for Plaintiff to file a corrected opposition.  *Id.*  The Court adopted the Parties' proposed briefing in a Minute Order dated April 26, 2023.  *Id.*  Plaintiff subsequently filed a Corrected Opposition on May 2, 2023.  ECF No. 50-1.

process privilege protects recommendations that are approved or disapproved without explanation. *Id.* at *4 (D.C. Cir. 2020) (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 185 (1975)).

Further, as described in the supporting Weetman Declaration and the *Vaughn* Index, the Action Memo is the principal distillation of an intra- and inter-agency deliberative process provided directly to the Secretary of State and containing "recommendations, including policy implications and legal advice and analysis . . . leading up to a final decision by the Secretary of State concerning whether and how to join the Paris Climate Agreement on behalf of the United States." Weetman Decl. ¶ 33.  As such, the document contains information intended to be protected by the deliberative process privilege which seeks to protect "document[s] from a subordinate official to a superior official" that reflect the "give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866, 868 (D.C. Cir. 1980). While the Department appropriately released the ultimate recommendation, the final decision reached, and purely factual background information within the records, the Department also identified the foreseeable harm that would be caused by disclosure of the withheld deliberations, irrespective of whether the recommendations made within the documents were ultimately approved.  *See* Weetman Decl. ¶¶ 35-36, 40.  The chilling result of releasing this material is "exactly what the privilege seeks to prevent." *Machado Amadis*, 2020 WL 4914093, at *4.

Plaintiff next contends that the information withheld in the Action Memo Attachment containing background information (*Vaughn* Index, at Doc. No. 2) and the email attachment containing draft points (*Vaughn* Index, at Doc. No. 3) is merely support for why the agreement should be approved, *see* Opp. at 5, and confusingly suggests that "agency employees" are more likely to be "encouraged rather than discouraged by public knowledge that their policy suggestions

have been adopted by the agency." *Id*. This is not only irrelevant but unavailing. The information withheld was properly redacted pursuant to Exemption 5 because the Action Memo Attachment includes redacted portions of deliberations that predate any final determination about the ultimate course of action and reflect the distillation of the Department's consideration of the rationale, merits, and drawbacks of the suggested course of action. Weetman Decl. ¶ 34. While the Secretary ultimately signed the memorandum, his signature alone does not adopt the views of subordinate officials and does not negate the justification for the Department's withholding; rather it reflects only his determination to approve or disapprove the ultimate recommendations of the memorandum which were released. *Id*. ¶ 17; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 257 (D.C. Cir. 1977); *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014).

So too with the email attachment containing draft talking points, which contains initial guidance as to how government officials could best describe to foreign counterparts the domestic legal process for the United States to enter into an international agreement. Weetman Decl. ¶ 37; *Vaughn* Index, at Doc. No. 3. Plaintiff is mistaken as to the nature and purpose of the email attachment, which it argues were prepared "in support of the Secretary's decision," Opp. at 5, to sign the Action Memo. Not so. The email attachment contains suggested arguments to be made as officials in the National Security Council were "formulating strategies for bilateral and foreign engagement." Weetman Decl. ¶ 37.

Further, Plaintiff's suggestion that the email attachment containing draft talking points was merely "'messaging' about existing policy," Pl's Opp. at 5, is inaccurate for multiple reasons. *First*, the email attachment containing draft talking points was prepared "before the Secretary reached a final decision on the legal form of the United States' entry into the Paris Climate

Agreement."  Weetman Decl. ¶ 39.  *Second*, the email attachment containing draft talking points was prepared by a State Department attorney at the request of National Security Council officials as the Council considered potential arguments to use in international negotiations.  Ex. 6, Suppl. Weetman Decl. ¶ 12.  As all three documents contained deliberative process information, the Court should reject Plaintiff's arguments that Defendant has not met its FOIA obligations.

Plaintiff also argues that Defendant has not shown foreseeable harm and in support, relies on the release of a different type of C-175 document by a different agency about a different potential agreement.  *See* Opp. at 6.  This argument runs counter to law and logic.  *First*, the document upon which Plaintiff relies, the legal memorandum attached to and in support of a "Request for Circular 175 Authorization to Negotiate and Conclude an Agreement Between the U.S. Department of Energy and the Ministry of Industry and Trade of the Czech Republic for Cooperation in Civilian Nuclear Energy Research and Development," is not the Action Memo at issue in this case.  On this basis alone, the Court should reject Plaintiff's argument that release of a different document should warrant the release of the documents at issue in this case.  *Second*, the release of a specific type of document does not undermine the potential foreseeable harm of a document of a related type on a different topic.  *See generally Students Against Genocide v. Dep't of State*, 257 F.3d 828, 835-36 (D.C. Cir. 2001) (rejecting plaintiff's argument "that by releasing some photographs . . . the government waived its right to withhold any others.").  *Third*, that a different agency chose not to withhold material about one potential agreement does not speak to the potential harm of material containing deliberations over a wholly different agreement.  *See Nielsen v. Bureau of Land Mgmt.*, 252 F.R.D. 499, 519-20 (D. Minn. 2008) ("This Court will not construe the release of the . . . unredacted email by [one agency] as waiver of the deliberative process privilege by [another agency], considering that it was not the [other agency] that released

the document to [the previous requester].")  The release of a different kind of memo by a different agency regarding a different agreement in no way undermines the merits of the foreseeable harm described in this case.  Indeed, since the deliberative process privilege is explicitly discretionary, a finding that the release of a type of document harms withholding of any other documents of a similar type in the future would perversely incentivize government agencies to withhold more, not less material.

Plaintiff's next argument misapprehends the relevant facts.  Plaintiff claims that the leak of an unauthenticated record (a legal memorandum) related to the C-175 for the Paris Agreement somehow undermines the foreseeable harm of the records Plaintiff has challenged.  Plaintiff, however, overlooks several important points.  Opp. at 6.  *First*, in this case, the Department withheld the legal memorandum related to the C-175 for the Paris Agreement that Plaintiff claims is publicly available, but Plaintiff does not challenge Defendant's withholding of the legal memorandum.  *See* Ex. 4, Feb. 21, 2023, email.  Nonetheless, as the Department previously shared with Plaintiff, another court within this District recently found that the specific legal memorandum Plaintiff cites was appropriately withheld by the State Department, despite it already supposedly being in the public domain.  *See Compet. Enter. Inst. v. Dep't of State*, 486 F. Supp. 3d 171 (D.D.C. 2020).  There, the court determined that the legal memorandum—the exact memorandum Plaintiff cites here—was not "officially acknowledged."  *Id*. at 184-185.  The Court should therefore reject Plaintiff's argument that Defendant cannot meet foreseeable harm analysis with respect to the Action Memo.

As the Court recognized in *Competitive Enterprise*, the cited legal memorandum failed to qualify as "officially acknowledged," because the Department did not confirm or deny the authenticity of the cited document and the document did not bear any indicia of official disclosure.

*Id.* at 184-85. The document's "mere public availability" was not enough for the Court to find that the document had met the qualifications of the public domain doctrine to fall outside the bounds of Exemption 5. For these reasons, this Court should also find that Department correctly withheld portions of the Action Memo consistent with its FOIA obligations.

Plaintiff's general argument that the Department has not met the required foreseeable harm requirement as to all three documents is also unfounded. *See* Opp. at 7 ("Defendant's only claims of harm are wild-eyed, yet nonetheless cookie-cutter claims at odds with what the Supreme Court said in *Sears*."). Plaintiff specifically argues that the Department "never explains why disclosing the redacted material would cause harm, in light of how agency employees take pride in their agency adopting their recommended policies." *Id.* Plaintiff misconstrues the import of *Sears,* 421 U.S. at 132. There, the Court referenced the policy considerations in determining whether Exemption 5 applies where an agency ultimately expressly adopts or incorporates by reference an inter-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion. *Sears*, 421 U.S. at 161. That is not the case here. The Department does not seek to utilize Exemption 5 to protect information in a final opinion by adopting information that was previously covered by Exemption 5.

Plaintiff is also incorrect that the Department has not explained how disclosure would cause foreseeable harm. *See* Opp. at 7. *First*, the Department pointed to the harm incurred by making pre-decisional deliberative analysis available to "officials of foreign governments with which the United States is negotiating international agreements." Weetman Decl. ¶ 35. *Second*, the Department noted that disclosure would "interfere with the ability of the Secretary to receive candid, thorough advice on the possible policy and legal risks of potential decisions, harming the quality of future decision-making" and increase the likelihood that "the Secretary will not receive

a full picture of the policy and legal considerations or risks at issue before entering future agreements." *Id*. ¶ 35. *Third*, because the withheld portions of the records "represent the views of subordinate officials advising the recipient of the action memo, as opposed to the adopted views of the final decision maker," *id*. ¶ 17, the release risks "public confusion about the ultimate reasoning of the Secretary for his final decision." *Id*. ¶ 36. All three reasons are reasonable bases for the foreseeable harm the Department anticipates with release of the redacted portions of the Action Memo and its Attachment containing background information.

While Plaintiff suggests that the Department never explained why an agency employee would be inhibited from speaking by the release of the employee's recommendations, Opp. at 7, this argument is irrelevant to the Department's FOIA obligations. Defendant needs only to point to the foreseeable harm stemming from disclosure. Nonetheless, the disclosure of arguments put forth by subordinate employees, some of which may be ultimately accepted and some of which may not, underscores the reasons for the Exemption 5 withholding. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (recognizing that the privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.").

Similarly, the Department also demonstrated foreseeable harm with release of the redacted material in the email attachment containing draft talking points, *Vaughn* Index, at Doc. No. 3. As noted previously, the material in the email attachment contains suggested arguments for consideration as officials in the National Security Council were "formulating strategies for bilateral and foreign engagement." Weetman Decl. ¶ 37. The foreseeable harm in this

circumstance is clear: executive branch officials need to share "internal recommendations, candid assessments, and other necessary exchanges," *id*. ¶ 40, full of deliberative recommendations on important foreign policy matters, such as delicate international negotiations, without fear that their suggestions will be publicly released.

Plaintiff also incorrectly submits that the Department's citation to "could" in its supporting Weetman Declaration is not enough and that it has alleged foreseeable harm in a "conclusory fashion" by not using the word "would."  Opp. at 8-9.  Plaintiff, unfortunately, has overlooked the seven times the Department used the "would" formulation in its initial Vaughn Index and the four times it used the formulation in the Weetman Declaration.  *See Vaughn* Index, at Doc. Nos. 1-3; Weetman Decl. ¶¶ 35, 40.  The Department, however, has specifically outlined the foreseeable harm that would result from revealing the Department's deliberative process.  *See id*.  Contrary to Plaintiff's argument, the Department has also connected the reason why the disclosure of the particular information will impede agency deliberations going forward, consistent with *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).  More specifically, the Weetman Declaration details that that disclosure of the advice rendered by subordinate members would create a chilling effect on internal deliberations because the internal deliberations would become available to officials of foreign governments with which the United States is negotiating international agreements and if the information is ultimately disclosed, the Secretary and officials throughout the Department may fear that seeking advice will subject that advice to public disclosure and thus they may abstain from seeking important advice or sharing key facts, which affects the Secretary's ability to receive a full picture of the policy and legal considerations or risks at issue.  *See* Weetman Decl. ¶ 35.  Similarly, the Weetman Declaration explained specifically with respect to the email attachment containing draft talking points, that disclosure of

the views and advice pertaining to the agency decision, policy formulation, and related international engagement strategies would chill the flow of internal recommendations and would hamper the ability of responsible officials to formulate and carry out executive branch programs. *Id*. ¶ 36. The Department has met its FOIA obligations as to describing the specific foreseeable harm that could result from release of the redacted material.

## II.   **The Department Did Not Impermissibly Withhold Factual Material.**

Plaintiff's arguments regarding the factual material embedded in the deliberative portions of the documents in question are also without merit. Specifically, Plaintiff argues that the Department has conceded that the Action Memo Attachment contains a selection of facts and as such, has not segregated factual information. Opp. at 10. Plaintiff misquotes the *Vaughn* Index. It states that "[d]isclosure of the withheld information, which contains a selection and analysis of facts reflecting the judgment of the author and other subordinate officials," but does not state that Defendant withheld purely factual material. *Vaughn* Index, Doc. No. 1, at 3. Contrary to Plaintiff's unsubstantiated argument, and as described in *Vaughn* Index, the Department released "all portions of the . . . [documents] . . . that are purely factual" but withheld portions that "contain[] a selection and analysis of facts reflecting the judgment of the author and other[s] . . . ." *Id*. at 3, 4.

The D.C. Circuit has long held that the selection of particular facts can be protected as a core aspect of the deliberative process. *See Montrose Chem Corp v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (holding that the act of distilling significant facts from insignificant facts constitutes an exercise of deliberative judgment); *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) ("the legitimacy of withholding does not turn on whether the material is purely factual in nature or whether it is already in the public domain, but rather on whether the selection or organization of facts is part of an agency's deliberative process"); *Elec. Priv. Info. Ctr.*

*v. Dep't of Just.,* 320 F. Supp. 3d 110, 119 (D.D.C. 2018) (holding that "the selection or organization of facts can be part of an agency's deliberative process and so exempt from FOIA"); *Jud. Watch Inc. v. Dep't of Just.*, Civ. A. No. 01-0639 (GK), 2006 WL 2038513, at *7 (D.D.C. July 19, 2006) (citing and upholding the agency declaration stating that the "very act of selecting those facts which are significant from those that are not, is itself a deliberative process").

Further, Plaintiff's selective quotation of the Department's description in its *Vaughn* that it withheld a "selection . . . of facts" (Opp. at 10), it itself revealing.  As laid out above, the quote in full reads that the withheld information "contains a selection and analysis of facts reflecting the judgement of the author and other[s.]"  *Vaughn* Index at 3, 4. Here, the withholding is appropriate as the selection of facts within the deliberative portions are inseparable from the analysis being provided.  *See Elec. Frontier Found.*, 739 F.3d at 13 (noting that "context matters," and that factual material may "'reflect[] the full and frank exchange of ideas'" in holding that factual portions "'could not be released without harming the deliberative processes of the government'" (citation omitted)); *Horowitz v. Peace Corps*, 428 F.3d 271, 277 (D.C. Cir. 2005) (protecting factual material because "thought processes are woven into document to such an extent" that the factual material could not be released without revealing agency deliberations).

The cases cited by Plaintiff hardly justify the overly rigid and restrictive rules Plaintiff suggests.  Plaintiff cites inappropriate withholding of factual materials like "objective analyses" of survey results (*Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1976)) and a response to "requests for research," Opp. at 10.  In both circumstances, the agencies sought to withhold standalone documents containing objective factual statements, not an intertwined and deliberative combination of analysis and fact explicitly linked to consideration of policy options for a final decision.

In its attempt to force the Department to reveal a deliberative set of draft talking points, Plaintiff suggests that the talking points are "primarily factual in nature, not a matter of policies being formulated." Opp. at 12. As described above, this is plainly wrong as Plaintiff mistakes the nature of the talking points and the policy to which they are contributing. The email attachment containing the draft talking points is far from the kinds of documents Plaintiff points to as "communicating, and perhaps spinning, an existing policy decision." The email attachment containing the draft talking points in question was a draft prepared as part of an ongoing deliberative process about international negotiations and written "before the Secretary reached a final decision on the legal form of the United States entry into the Paris Climate Agreement." Weetman Decl. ¶ 39. The draft talking points were, therefore, not drafted to "explain what existing policies are, or how to apply them" as Plaintiff suggests, Opp. at 21, but instead to inform government negotiators about arguments they could marshal in the course of the "execution of foreign diplomatic engagements." Weetman Decl. ¶ 39; *see also Hooker v. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 59 (D.D.C. 2012) (holding that drafts that reveal "ongoing, collaborative dialogue" may be withheld under deliberative process privilege).

As a last resort, Plaintiff suggests that the Court should conduct *in camera* review. Opp. at 13. In this Circuit, "in camera review is a discretionary tool." *Juarez v. Dep't of Just.*, 518 F.3d 54, 59-60 (D.C. Cir. 2008). Further, Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, a presumption for which Plaintiff may rebut with contrary evidence. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Plaintiff has not provided any evidence, however, justifying *in camera* review; rather, Plaintiff has only noted that vagueness, inconsistencies, or bad faith may warrant in camera review, without any evidence that those circumstances are present. *See Ray v. Turner*, 587 F.2d 1187,

1195 (D.C. Cir. 1978) ("[T]he government's burden does not mean that all assertions in a government affidavit must routinely be verified by audit.").  On this basis, the Court should reject Plaintiff's suggestion that *in camera* review is warranted.

## III.   The Department Did Not Waive Any Privilege.

Plaintiff next argues that the Department's *Vaughn* index contains insufficient detail to show that any claimed privilege was not waived.  Opp. at 14.  Here, Plaintiff again asserts that the Department somehow waived its privilege on the Action Memo, one of the memo's attachments, and an unrelated set of draft talking points because "the legal memorandum attached to the Action Memo was released by someone."  *Id*. at 15.  As noted above, Plaintiff's argument is misplaced. The Department has steadfastly refused to authenticate the cited legal memorandum, and in any event, this Circuit has repeatedly and consistently held that leaked material does not constitute a waiver.  *See, e.g.*, *Edmonds v. FBI*, 272 F. Supp. 2d 35, 49 (D.D.C. 2003); *Wash. Post v. Dep't of Def.*, 766 F. Supp. 1, 9 (D.D.C. 1991).  The sound policy purpose behind this rule is clear: any finding that a leak requires waiver would perversely contribute to the "exacerbation of the harm created by the leaks."  *Murphy v. FBI*, 490 F. Supp. 1138, 1142 (D.D.C. 1980).  Finally, even if this Court were to somehow determine that the unauthenticated legal memorandum represented an authorized disclosure, the resultant waiver would be limited to the document itself.  *See Afshar v. Dep't of State*, 702 F.2d 1125, 1132 (D.C. Cir. 1983) (finding no waiver where the "withheld information is in some material respect different" from what the requester claimed had been previously released); *Edmonds*, 272 F. Supp. 2d at 49 (approving the withholding of information not identical to the quotes released by the government).  Here, the Action Memo, the Action Memo Attachment, and the email attachment containing draft talking points are not the same information as the cited legal memorandum that was leaked.

Plaintiff next takes aim at the Department's *Vaughn* Index to suggest that even if the "State Department itself did not disseminate such records outside the Executive Branch, other agencies or their employees might well have released them to third parties." Opp. at 15. In this regard, Plaintiff cites multiple out of Circuit, non-precedential cases to suggest that the Department is required list the full name of all authors, the full name of all addresses, and the full names of the additional person or persons to which each agency record was circulated. *Id.* at 16, 18, 18 n.6. The Department, however, has met its burden, by identifying the author and recipient of each document. *See Reps. Comm. for Freedom of the Press v. FBI*, 548 F. Supp. 3d 185, 192 (D.D.C. 2021) (holding that "[a]n agency may offer declarations from agency officials, *Vaughn* indices, thee requested records in camera, or a combination of some or all of those sources" and "[w]hat matters is that the agency materials give the reviewing court a reasonable basis to evaluate the claim of privilege.") (internal quotations omitted).

Further, Plaintiff's citation (Opp. at 18) to *Electronic Frontier Foundation v. Department of Justice*, 826 F. Supp. 2d 157, 170 (D.D.C. 2011), is unpersuasive. In that case, the Court held that the agency's explanations for the withheld documents was inadequate. But that is not the case here. The Department has described in detail as to the underlying nature of each document to warrant the application of Exemption 5 for deliberative process protection. *See Vaughn* Index; Weetman Decl.; Ex. 5, Suppl. *Vaughn* Index; Ex. 6. As to Plaintiff's complaint that the Department has not indicated which redactions were taken pursuant to the attorney-client privilege as opposed to the deliberative-process privilege, the Department has attached a Supplemental *Vaughn* Index and Weetman Declaration designating which portions are withheld pursuant to the deliberative process privilege (all the redactions) as opposed to the attorney-client privilege (a

portion of the redactions in two of the three contested documents and all of the redactions in the third).  *See* Exs. 5, 6.

Plaintiff suggests on several alternate bases that the Department's Exemption 5 withholdings based on the attorney-client privilege are inconsistent with FOIA.  Plaintiff first argues (1) that the Exemption 5 withholdings fail because the Department notes that the communications were within the Executive Branch and between specified offices or agencies within it, but not that they were limited to people authorized to act or speak for the organization; (2) that a document does not qualify as confidential if it is broadly circulated; and (3) that the privilege can be waived by sharing it with non-legal staff.  Opp. at 19.  "The fact that the communication at issue . . . may have been circulated among more than one [Agency] employee . . . does not necessarily destroy their confidentiality, however.  Where the client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization who are authorized to act or speak for the organization in relation to the subject matter of the communication."  *Mead Data*, 566 F.2d at 253 n.24.  Plaintiff makes no attempt to demonstrate that the communications at issue were distributed to anyone other than employees who were authorized to act or speak for the organization.  Nothing in Plaintiff's opposition therefore defeats the Agency's withholding based on Exemption 5 and the attorney-client privilege.  Further, there is nothing in the record to suggest that the Department did not attempt to protect the document's dissemination within the Agency, as Plaintiff suggests.  *See* Opp. at 19 (citing *Coastal States*, 617 F.2d at 863).

As to Plaintiff's argument regarding waiver through sharing a document with non-legal staff, that the Department has not listed the names of any sender or recipient by name, and that a communication is made directly to an attorney or that an attorney is copied does not make the

communication privileged, Plaintiff again cites multiple out-of-Circuit, non-precedential cases. Opp. at 19-21.   Nonetheless, the Department has met its burden to demonstrate that the withholdings made pursuant to the attorney-client privilege were appropriate by describing that the withheld portions contain legal analysis and advice from Department attorneys to Department clients concerning the Agreement and potential U.S. acceptance.  *Vaughn* Index at Doc. No. 1.

The Department also described that, with respect to the Action Memo Attachment, that the withheld portions contain legal advice from Department attorneys to Department clients concerning the Agreement and potential U.S. acceptance of it, revealing the specific areas about which the clients sought legal guidance as well as information provided to the attorneys for the purpose of providing this legal advice.  *Id*. at Doc. No. 2.  Finally, the Department also described how the email attachment containing draft talking points contains confidential communications between clients (from the National Security Council) and attorneys—specifically Susan Biniaz, an attorney-advisory for the State Department—for the purpose of seeking and providing legal advice regarding the background and possible domestic legal processes for the United States to become a party to the Paris Agreement.  *Id*. at Doc. No. 3.  The records establish that the documents were drafted by attorneys or incorporated their significant input.

The Action Memo and its Attachment are core parts of the Circular 175 procedure, which is itself primarily legal in nature, as detailed in the Weetman Decl, ¶¶ 19-25.  As noted in the Declaration, the Circular 175 procedure is overseen by attorneys of the Office of Treaty Affairs within the Office of the Legal Adviser.  *Id*. ¶ 19.  The Declaration also describes that the Department's Foreign Affairs Manual requires "the [C-175] action memo must be cleared with 'the Office of the Legal Adviser.'"  *Id*. ¶ 24.  The Department seeks to protect "legal issues attendant to the potential U.S. acceptance of the Paris Climate Agreement . . . and . . . the legal

issues involved in the domestic process for the U.S. to enter into an international agreement. *Id.* ¶ 43.   The Department has reasonably described its articulated bases for withholding under Exemption 5 based on the deliberative process and attorney-client privileges.[2]

## IV.   The Action Memo and Its Attachment Contain No Working Law.

Plaintiff also argues that disclosure is warranted on the basis that the Action Memo and its Attachment contain working law.  Opp. at 23.  The Supreme Court has held that "the reasons which [ ] supply the basis for an agency policy actually adopted . . . constitute the 'working law' of the agency[,]" and are "outside the protection of Exemption 5."  *Sears,* 421 U.S. at 152–53.  The working law doctrine ensures that an agency cannot keep secret its final positions on issues.  *See Coastal States*, 617 F.2d at 866 (finding that a predecisional document "can lose that status if it is adopted, formally or informally, as the agency position on an issue"); *Brinton v. Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980); (holding that predecisional materials "become final opinions only if the agency expressly adopts or incorporates them as working law.").  Here, the deliberative analysis provided to the Secretary to inform his ultimate (released) decision, was not expressly adopted.  Weetman Decl.  ¶ 17.  Thus, the working law doctrine is inapplicable.  For similar reasons, another court in this district found a legal memorandum attached to the Paris Climate Agreement C-175 action memo was also not working law.  *See Competitive Enter. Inst.*, 486 F. Supp. 3d at 181-85.  Just as the legal memorandum was "not binding on the Secretary," the broader

---

[2]   Plaintiff argues that the Department is obligated to provide the bar numbers of the licensed attorneys making the communications and relies on *In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  That particular case was not decided in the FOIA context.  *See id.*  In any event, the Department has met its FOIA obligations by providing a description that "rises to the level of being logical or plausible, which the D.C. Circuit has explained suffices."  *Hunton & Williams LLP v. EPA*, 248 F. Supp. 3d 220, 255 (D.D.C. 2017); *see also supra* § III.

action memo package the legal memorandum was part of was not binding on the Secretary. *Id.* at 183.

## V.    The Email Attachment Containing Draft Talking Points Did Not Message Existing Policy.

In a final attempt to argue that the Department's exemptions were inconsistent with its FOIA obligations, Plaintiff attempts to rehash that the email attachment containing draft talking points contained messaging about existing policy, Opp. at 25, an issue that is addressed above (*supra* § I).  The Court should thus reject Plaintiff's suggestion that the email attachment is not exempt from disclosure.

## CONCLUSION

For all the reasons set forth above and in the supporting *Vaughn* indices and Weetman Declarations, the Department respectfully requests that the Court grant summary judgment in its favor.

Dated: May 24, 2023                                      Respectfully submitted,
       Washington, DC

                                               MATTHEW M. GRAVES, D.C. Bar #481052
                                               United States Attorney

                                               BRIAN P. HUDAK
                                               Chief, Civil Division

                                               By:    */s/ Dedra S. Curteman*
                                               DEDRA S. CURTEMAN
                                             Assistant United States Attorney
                                             601 D Street, NW
                                             Washington, DC 20530
                                             (202) 252-2550

                                             *Attorneys for the United States of America*

OF COUNSEL:

MICHAEL ZUBROW
Attorney-Advisor, U.S. Department of State